IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL DALTON AND PAUL DALTON, h/w,<br>            Plaintiffs,<br><br>            v.<br><br>THE LITTLE LION AND CPJD HOLDINGS, LLC,<br>            Defendants. | CIVIL ACTION<br><br><br><br><br>NO.  19-5358 |

MEMORANDUM OPINION

Plaintiffs Carol and Paul Dalton bring this negligence action for injuries sustained by the former in Defendants' restaurant, The Little Lion. Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Defendants' motion shall be denied.

I.     BACKGROUND

In July of 2017, Plaintiff Carol Dalton, a New Jersey resident, took a trip with a senior citizens group to Philadelphia's Museum of the American Revolution. She and two companions decided to have lunch at The Little Lion. The party was seated at a table near the front of the restaurant. Dalton ordered her food and then asked her server, Ian Amidon, where she could find the restroom.

Amidon told Dalton that the restroom was on the second floor. She protested, not wanting to climb the stairs. Amidon then explained that there was a first-floor restroom—the restaurant's handicap-accessible restroom—but that "the floor is kind of slippery there." Dalton responded: "Maybe I shouldn't go there. I'll go upstairs. I'll climb the stairs." According to Dalton, Amidon then told her "No, no, no. It'll be all right [sic] if you just take it easy and be

careful, it'll be all right [sic]."

The day was very hot and humid, and the restaurant's air conditioning was running. A restaurant guest had, earlier that morning, requested that the windows be opened. With the windows open and the air conditioning on, condensation began to form on some areas of the restaurant's floors. Approximately five to ten minutes before Dalton inquired about the restroom, Amidon had put down a yellow wet floor sign because, as Amidon testified, the floor had become "a little bit wet" and "slick."

To reach the first-floor restroom, Dalton had to proceed down a small wooden ramp. At the bottom of the ramp was a dark tile floor. Somewhere in this area (the parties dispute its exact location) was the wet floor sign. Dalton walked slowly down the ramp, holding on to its railing. She stepped onto the tile floor and then slipped and fell to the ground.

## II. LEGAL STANDARD

"[S]ummary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (citations and internal quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotations and alterations omitted). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007).

There is diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). "A federal court sitting in diversity must apply state substantive law and federal procedural law."

*Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000). The substantive negligence law of Pennsylvania thus governs this action.[1]

### III.   DISCUSSION

Dalton alleges that her injuries were caused by a "wet/slippery condition" on the restaurant's tile floor. Her claim against Defendants is based in negligence for premises liability.[2] To prevail on this claim, Dalton must establish: (1) that Defendants had a duty to conform to a certain standard of care; (2) that Defendants breached this duty; (3) that such breach caused Dalton's alleged injuries; and, (4) that Dalton incurred actual loss or damage. *Krentz v. Consol. Rail Corp.*, 910 A.2d 20, 27-28 (Pa. 2006); *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 227 (3d Cir. 2020).

In a premises liability action, the standard of care owed by a property owner depends on whether the person entering the premises is a trespasser, licensee, or invitee. *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983). In this case, there is no dispute that Dalton was an invitee. "The duty owed to a business invitee is the highest duty owed to any entrant upon land." *Pace v. Wal-Mart Stores East, LP*, 337 F. Supp.3d 513, 518 (E.D. Pa. 2018) (quoting *Campisi v. Acme Mkts., Inc.*, 915 A.2d 117, 119 (Pa. Super. 2006)). It is not, however, absolute. The Pennsylvania Supreme Court has adopted § 343 of the Restatement (Second) of Torts for determining a property owner's liability to an invitee, *see Carrender*, 469 A.2d at 123, which provides:

---

[1] Dalton's Complaint was transferred to this Court from the District of New Jersey pursuant to 28 U.S.C. § 1406(a). *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). Because this case was transferred for improper venue, rather than for the convenience of the parties, the law of the transferee state—Pennsylvania—applies. *See Lafferty v. St. Riel*, 495 F.3d 72, 77 (3d Cir. 2007) ("When cases have been transferred for improper venue, transferee courts generally apply the substantive law they would have applied had the action been brought there initially.").

[2] Dalton's husband asserts a derivative claim for loss of consortium, which is not addressed in Defendants' briefing.

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts, § 343 (1965).

According to Dalton, Defendants breached their duty of care by, *inter alia*, failing to take steps to properly maintain their premises and failing to properly warn Dalton of the slipping danger. Defendants contend that summary judgment is appropriate for four reasons. First, they argue that there is insufficient evidence that a hazardous condition existed on Defendants' premises. Second, that Dalton's comparative negligence outweighs any negligence on the part of Defendants. Third, that Dalton's recovery is precluded by her assumption of the risk. Finally, they contend that the choice of ways doctrine bars Dalton's claims.

### A. Evidence of a Hazardous Condition

The first issue in any slip-and-fall case is whether there was, in fact, a hazardous condition on the premises. *See Daniels v. Sears and Sears Roebucks & Co.*, 2016 WL 521205, at *3 (E.D. Pa. Feb. 10, 2016) ("A plaintiff's ability to produce evidence of a dangerous or hazardous condition is the crux of a premises liability action involving a slip-and-fall."). Defendants suggest that Dalton cannot establish the existence of a foreign substance on the restaurant's floor and thus cannot establish that Defendants breached any duty of care, because Dalton could not recall seeing any slippery substance on the floor and could not remember whether her clothes were wet after her fall.

Contrary, however, to Defendants' position, the record contains ample evidence from which a jury could infer that the floor was wet or slippery at the time of Dalton's accident. Amidon testified that condensation was forming on the floor, prompting him to put up a wet floor sign only minutes before Dalton inquired about the restroom. He described the floor as "slick" and "a little bit wet." He testified that the servers knew not to open the restaurant's windows when the air conditioning was running because it would cause such condensation. He further testified that the floor could be an issue for individuals not wearing the non-slip footwear worn by restaurant employees. Dalton testified that after she fell, other employees came up to her and said that they had been "slipping on [that area of the floor] all day."[3] Given this evidence, Dalton's testimony that she did not see a slippery substance on the dark tile floor is not dispositive. *See Bennett v. Dollar General, Inc.*, 2020 WL 3964971, at *4 (E.D. Pa. July 13, 2020). From this record, a factfinder could reasonably infer that a hazardous condition existed on the restaurant's floor when Dalton fell.

### B. Comparative Negligence

Defendants next argue that Dalton's comparative negligence precludes her recovery. Pursuant to Pennsylvania's comparative negligence statute, a negligent plaintiff may nevertheless recover, as long her "negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought." 42 Pa. Cons. Stat. Ann. § 7102(a). Questions of comparative negligence are, as Defendants acknowledge, typically left to the jury,

---

[3] In their reply to Dalton's Additional Statement of Facts, Defendants identify Dalton's testimony concerning statements from other restaurant employees as inadmissible hearsay. The parties do not offer any argument or legal authority bearing on this issue. Still, the party that bears the burden of proof at trial—as Dalton will on her negligence claim—is not permitted to rely on inadmissible evidence in opposition to a motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(2); *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment."). The admissibility question may, in this case, be reserved for trial, because even if this specific testimony is inadmissible, the remaining evidence is sufficient on its own to create genuine issues of material fact regarding Defendants' alleged negligence.

and may be decided as a matter of law only where "the facts so clearly reveal the plaintiff's negligence that reasonable minds could not disagree as to its existence." *Bennett*, 2020 WL 3934971, at *5 (alteration in original) (quoting *O'Brien v. Martin*, 638 A.2d 247, 249 (Pa. Super. 1994)).

According to Defendants, Dalton's negligence outweighs their own as a matter of law because "no jury could reasonably conclude the Defendants failed to exercise reasonable care" to protect Dalton from the slippery floor, and Dalton proceeded to the first-floor restroom despite being informed of the hazard. Defendants are wrong on both counts. Amidon testified that he was aware the floor was slippery and had, in fact, experienced the condensation issue on previous occasions. He also testified that the floor presented a unique hazard for individuals not wearing non-slip footwear, such as Dalton. Dalton testified that other restaurant employees told her they had been slipping on the tile floor all day. She also testified that Amidon told her it would be alright to use the first-floor restroom, as long as she proceeded carefully. There is no indication that Dalton did not follow Amidon's advice; indeed, there is evidence from which a jury could infer that Dalton did in fact walk carefully on her way to the first-floor restroom. Still, she fell.

The record further indicates that, beyond Amidon's warning that the route to the first-floor restroom was "kind of slippery," only one other step was taken to warn Dalton of the alleged hazard: Amidon put up a wet floor sign. The parties dispute where the sign was located, with Dalton testifying that the sign was on the wooden ramp and Defendants suggesting the sign was on the tile floor. But regardless of where the sign was placed, the parties' testimony creates genuine issues of fact as to whether Defendants' efforts to inform Dalton of the alleged hazard were reasonable and whether Defendants were negligent in not taking further steps to address the

hazard, such as by prohibiting restaurant guests from accessing the first-floor restroom, mopping up the area, or placing a mat over the slippery floor. It would, accordingly, be inappropriate to make a comparative negligence determination at this juncture.

The authority offered by Defendants in support of summary judgment is not on point. In *Carrender*, the Pennsylvania Supreme Court found recovery barred as a matter of law, where the plaintiff chose to park next to a patch of ice in the defendant's otherwise-clear parking lot, successfully traversed the slippery ice to enter the defendant's premises, and then, upon returning to her vehicle, slipped and fell on the ice patch. 469 A.2d at 124. Here, by contrast, Dalton testified both that Amidon informed her it would be alright to visit the first-floor restroom and that there was no slippery substance visible on the tile floor. Similarly, in *Wilkerson v. United States*, 2010 WL 1462542 (M.D. Pa. Apr. 9, 2010), the court barred recovery where the plaintiff, an inmate, fell on the prison's cafeteria floor. The court found dispositive evidence that the plaintiff knew a water-like substance accumulated on that particular area of the floor on a daily basis. *Id.* at *6. In this case, Dalton had never visited the restaurant before, was unaware of its specific condensation issue, and, again, testified that she was told she could visit the first-floor restroom.

Finally, in *Clayton v. United States*, 2016 WL 336812 (E.D. Pa. Jan. 28, 2016), this Court considered whether a plaintiff was barred from recovering for negligence as a matter of law, where the plaintiff entered a post office lobby and, not looking where she was going, slipped and fell on a bright yellow wet floor sign. *Id.* at *1-2. The parties disputed where the sign was positioned at the time of the accident, with the plaintiff alleging that the sign was flat on the ground and the defendant suggesting the sign was upright. *Id.* at *2. Recognizing that "[i]f there is anything settled in the law of negligence in Pennsylvania, it is the duty of a person to look

7

where he is walking and see that which is obvious," this Court granted summary judgment in the defendant's favor, finding that regardless of where the sign was positioned, it "would have been visible to any visitor once he or she stepped inside" the post office's lobby. *Id.* at *3 (quoting *Lewis v. Duquesne Inclined Plane Co.*, 28 A.2d 925, 926 (Pa. 1942)). Indeed:

> The sign was over two feet tall (or long, if lying flat on the floor), one foot wide, and colored bright yellow—in stark contrast to the dark floor mats covering the floor where Plaintiff fell. The size, shape, and color of the sign would render it obvious to a reasonable person exercising normal perception and judgment as they stepped inside the Post Office.

*Id.* Because the hazard was obvious, summary judgment was appropriate. *Id.*

According to Defendants, the same result should obtain here. But in this case, Dalton does not allege that her fall was caused by Defendants' wet floor sign; rather, she alleges that her fall was caused by a wet or slippery substance on the restaurant's dark tile floor, a hazard which—unlike the bright yellow sign in *Clayton*—was not clearly visible and thus not clearly obvious. There is no record evidence that Dalton was not looking where she was going as she walked to the first-floor restroom. And while Defendants suggest that the hazard should have been obvious to Dalton because Amidon placed a wet floor sign on or around the tile floor, Dalton testified that Amidon expressly told her it would be alright to walk on the surface. On this record, it cannot be said that the slippery condition of the restaurant's tile floor was so obvious as to preclude Dalton's recovery as a matter of law.

### C. Assumption of the Risk

Defendants also contend that Dalton's claims are barred pursuant to the assumption of the risk doctrine, arguing that Dalton assumed the risk of slipping on the restaurant's tile floor by choosing to use the first-floor restroom.

The Pennsylvania Supreme Court has "in essence" abolished assumption of the risk as an

8

affirmative defense, except in strict liability cases, cases in which the doctrine is preserved by statute, or cases involving an express assumption of risk. *Howell v. Clyde*, 620 A.2d 1107, 1113 n.10 (Pa. 1993) (plurality opinion). Here, Defendants assert that Dalton expressly assumed the risk of her actions, making application of the doctrine appropriate. For this argument to succeed, the record must establish, as a matter of law, that: (1) Dalton consciously appreciated the risks attending her action; (2) she assumed the risk of injury by engaging in the action despite appreciating its risks; and, (3) the injury she sustained was the same as that which she appreciated and assumed. *Bolyard v. Wallenpaupack Lake Estates, Inc.*, 2012 WL 629391, at *5 (M.D. Pa. Feb. 27, 2012).

"The mere fact one engages in activity that has some inherent danger does not mean that one cannot recover from a negligent party when injury is subsequently sustained." *Bullman v. Giuntoli*, 761 A.2d 566, 572 (Pa. Super. 2000). Rather, assumption of risk may be established as a matter of law only where "it is quite clear that the specific risk that occasioned injury was both fully appreciated and voluntarily accepted." *Id.* at 571; *Barrett v. Fredavid Builders, Inc.*, 685 A.2d 129, 131 (Pa. Super. 1996) (assumption of risk doctrine applied "only where it is beyond question that the plaintiff voluntarily and knowingly proceeded in the face of an obvious and dangerous condition"); *see also Barillari v. Ski Shawnee, Inc.*, 986 F. Supp.2d 555, 563 (M.D. Pa. 2013) (plaintiff "must be aware of 'the *particular* danger' from which he is subsequently injured in order to voluntarily assume that risk as a matter of law" (quoting *Bolyard*, 2012 WL 629391, at *6)).

According to Dalton, Amidon informed her that there was a first-floor restroom she could use, but that "the floor is kind of slippery there." According to Dalton, this was Amidon's only description of the alleged hazard. Amidon then expressly told Dalton it would be alright to use

the first-floor restroom, which, Dalton testified, made her think "it wasn't maybe so bad." There is no indication that Amidon explained to Dalton which part of the floor was slippery and she has testified that she did not see any wet or slippery substance before stepping on to the tile floor. She has also testified that the wet floor sign was located on the wooden ramp, rather than the tile. Given Amidon's nebulous description of the risk involved, his assurance that Dalton would be alright, and Dalton's testimony that the tile floor did not appear wet or slippery, there are genuine issues of fact as to whether Dalton was subjectively aware of the specific risk she encountered and whether the condition of the restaurant's floor was so obviously dangerous as to completely bar Dalton's recovery. Thus, the assumption of the risk doctrine is inapplicable.

### D. Choice of Ways Doctrine

Finally, Defendants contend that under Pennsylvania's choice of ways doctrine, recovery should be precluded because Dalton chose to encounter a potentially slippery floor rather than climb the stairs to the second-floor restroom.

The choice of ways doctrine may bar recovery where there is "evidence of (1) a safe course, (2) a dangerous course, and (3) facts which would put a reasonable person on notice of the danger or actual knowledge of the danger." *Updyke v. BP Oil Co.*, 717 A.2d 546, 552 (Pa. Super. 1998) (quoting *Downing v. Shaffer*, 371 A.2d 953, 956 (Pa. Super. 1977)). But Pennsylvania courts are "loath to apply" the doctrine in general, *O'Brien*, 638 A.2d at 249, and it is even more rarely applied at the summary judgment stage, *Graham v. Mohegan Sun at Pocono Downs*, 2016 WL 3254744, at *3 (M.D. Pa. June 14, 2016) (citing *Cousins v. Sharon City Sch. Dist.*, 27 Pa. D. & C.4th 319, 332 (1994)). This is because "[t]he question of whether a danger was known or obvious, and if so, whether a safe way was available so that it is clear that [the plaintiff] assumed the risk, is a question of fact for the jury." *Id.* (quoting *Com v. Harris*, 522

A.2d 184, 186 (Pa. Commw. 1987)).  Thus, "in those very few cases where the doctrine has been applied to find that the plaintiff was contributorily negligent, the danger the plaintiff chose to confront was indisputably obvious."  *O'Brien*, 638 A.2d at 249; *Kweh v. US Airways*, 2017 WL 4862771, at *3 (Pa. Super. Oct. 27, 2017) ("[A]bsent facts that are so clear that reasonable minds could not differ, the trial court may not grant summary judgment and it remains the responsibility of the ultimate fact finder to weigh evidence and apportion negligence.").

Application of the choice of ways doctrine is not warranted at this stage of the litigation for the same reason that application of the assumption of the risk doctrine is unwarranted:  Even assuming Defendants have met their burden of establishing a "safe course," reasonable minds could differ as to whether the danger Dalton chose to confront—that is, the restaurant's slippery floor—was so indisputably obvious as to completely preclude her recovery.

An appropriate order follows.

**April 6th, 2021**                                                                 **BY THE COURT:**

                                                                                    /s/Wendy Beetlestone, J.

                                                                                    _____
                                                                                    **WENDY BEETLESTONE, J.**